NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241317-U

NO. 4-24-1317

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CORDERO BLAN, | ) | Nos. 22CF490, |
| Defendant-Appellant. | ) | 23MT322, |
| | ) | 23CM607, |
| | ) | 23CM1261, |
| | ) | 24CF2063 |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: By denying defendant's motion for relief from pretrial detention, the circuit court did not abuse its discretion.

¶ 2     Defendant, Cordero Blan, moved for relief from pretrial detention. The circuit court of Winnebago County denied the motion. Defendant appeals pursuant to the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652 (eff. Jan. 1, 2023). Because we find no abuse of discretion in this ruling (see *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11), we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5          On August 21, 2024, in Winnebago County case No. 24-CF-2063, a criminal complaint was filed against defendant. The complaint was made up of five counts.

¶ 6          Count I charged him with being an armed habitual criminal in that on August 21, 2024, he knowingly possessed a firearm after having been convicted two or more times of aggravated unlawful use of a weapon and unlawful use of a weapon by a felon. See 720 ILCS 5/24-1.7(a)(2) (West 2022).

¶ 7          Count II charged him with committing unlawful possession of a weapon by a felon after he previously was convicted of that offense. See *id.* § 24-1.1(a), (d).

¶ 8          Count III charged him with possession of a firearm without a firearm owner's identification (FOID) card. See 430 ILCS 65/2(a)(1) (West 2022).

¶ 9          Count IV charged him with resisting a peace officer. See 720 ILCS 5/31-1(a)(1) (West 2022).

¶ 10          Count V charged him with walking on a highway. See 625 ILCS 5/11-1007(a) (West 2024).

¶ 11              B. The Hearing on the Petition to Deny Pretrial Release

¶ 12          On August 22, 2024, in case No. 24-CF-2063, the State petitioned for the denial of pretrial release. The petition alleged that defendant was charged with three detainable offenses, namely, counts I, II, and III of the criminal complaint.

¶ 13          That same day, the circuit court held a hearing on the petition. Without objection by the defense, the court granted the prosecutor's request to take judicial notice of the factual summary accompanying the criminal complaint.

¶ 14          The factual summary was signed by Officer Ivy of the Rockford Police Department. He reported as follows:

"On August 21, 2024[,] at 0151:00 hours[,] while working in a 2-man squad, in squad car 317, Officer VanVleet and I observe[d] two males walking in the roadway on Kishwaukee and Pope St. [T]he males, later identified as [defendant] and Domanque Williams, turned onto Pope St. as they continued to walk in the roadway.

Officers turned onto roadway[,] where I observed [defendant] look back while his hand was at his waistband area. [Defendant] started to walk towards the sidewalk as Officers activated their emergency lights and exit[ed] the squad car. Once out the squad [car,] I instructed [defendant] to come to me[.] [H]owever[,] he refused and started running towards the driveway of 949 Kishwaukee. I pursued after [defendant] as he ran behind a vehicle. As [defendant] ran past the vehicle[,] I heard a metal like sound hit the ground which based on my training and experience I believed to be an unknown type handgun. I pursued past the vehicle and briefly lost sight of [defendant] but was able to hear him running back towards Pope St. l ran back to the rear of the vehicle[,] where I observed [defendant] emerge from the other side of the vehicle. I instructed [defendant] to get on the ground[,] which he did. I placed handcuffs on [defendant] and detained him at 015l:35 hours.

Once in the squad [car,] I returned to the area where I heard the metal like noise and observed a silver and black Smith and Wesson Springfield (14 rounds in the magazine) laying on the driveway next to the vehicle.

I ran [defendant's] personal information via Control 5[,] which returned with an active warrant and no valid [firearm owner's identification card FOID

[card] or [concealed carry license]. It was later founded [*sic*] [defendant] has been found guilty on 9 weapons charges and several other charges.

Found guilty of: 2/21/2018 Aggravated Unlawful Use of a Weapon (UUW) 2007CF-0003124, 8/20/14 Unlawful Use of a Weapon by a felon 2013CF-0002338 and 2015-CF-1206, and 9/8/2/21 [*sic*] Reckless Discharge 2020CF-0001367."

¶ 15　　　　The prosecutor argued that defendant "pose[d] a real and present threat of harm" because he had "an extensive criminal history[,] including crimes of violence." The prosecutor pointed out:

"In 2006 and 2008, he was sentenced to 2 and a half years in the Illinois Department of Corrections [(DOC)] for an aggravated unlawful use of weapons by a felon [conviction]. And then concurrently with that was also found guilty for possession of firearm with a revoked FOID [card] and an aggravated assault with a deadly weapon. Then in 2014, he was sentenced to 2 years in the [DOC] for a Class 3 possession of a weapon by a felon. And then in 2017, [he] was sentenced to 7 years for unlawful use of weapons by a felon charge. And then lastly, in 2021, [he] was sentenced to 3 years for a reckless discharge of a firearm. So, by my count, he has been to the [DOC] 5 times, with another, with another stint in the Illinois Department of Juvenile Justice with 4 of his adult trips *** to DOC being for firearms related offenses."

¶ 16　　　　In the prosecutor's view, there would be no danger-mitigating potential in any conditions of pretrial release:

"With regards to no condition or combination of conditions that can

- 4 -

mitigate his risk of harm, I again point primarily to his criminal history. He's been sent to DOC 4 times for firearms offenses. He's on pretrial release for another firearms offense. I think it should be painfully clear to this defendant that he is not supposed to have firearms and yet here he is being charged yet again with another armed habitual criminal charge because he cannot not possess firearms. So, based on all of that, Judge, I am asking that you grant the State's petition to deny pretrial release."

¶ 17     Judge Peterman granted the petition.

¶ 18                    C. Defendant's Motion for Relief

¶ 19     On September 18, 2024, defendant filed a motion for relief from the pretrial detention order. For two reasons, he contended that the State's petition should have been denied: (1) the State failed to prove, by clear and convincing evidence, that the proof was evident or the presumption great that defendant committed the charged offenses (see 725 ILCS 5/110-6.1(e)(1) (West 2022)), and (2) the State failed to failed to prove, by clear and convincing evidence, that no condition or combination of conditions could mitigate the real and present threat to the safety of persons or the community (see *id.* § 110-6.1(e)(3)).

¶ 20     At a hearing on October 1, 2024, with Judge Schafer presiding, the circuit court denied the motion for relief. The court told defense counsel, "I will take you at your word that[,] [at the hearing of August 22, 2024,] that they didn't particularly address those [potential] conditions [of pretrial release]." Even so, the court reaffirmed the decision to deny pretrial release. Judge Schafer explained:

         "It is circumstantial. It's hearing a noise. But it's traveling along the path that the defendant had run, hearing the noise and then finding a handgun in that

- 5 -

area.

It is clear from looking at the pretrial report that [defendant] is not supposed to have firearms. He has several prior convictions and sentences to the [DOC] for unlawful use of a weapon, unlawful possession by a felon and one for reckless discharge. And so, given those particular convictions, he can't possess a firearm.

And so I do agree with Judge Peterman's assessment concerning the summary of the allegations, which, if supported by credible evidence at trial, could support a finding that the defendant committed a detainable offense.

The Court went on whether the State had made these arguments at the time or not and had looked at whether there were conditions or not, some of which the State has articulated today. Judge Peterman noted at the time that [defendant] was on pretrial release and was noncompliant.

\* \* \*

And so given his noncompliance while on pretrial release with reporting to Pretrial Services; his risk assessment at five out of six, which is in the high-risk category; his prior history of multiple convictions and weapon offenses, I do find that that burden has been met that there are no conditions or combination of conditions.

Simply telling [defendant] to do something isn't achieving the response that we want. We don't have electronic monitoring.

You know, in terms of a curfew, somebody can get a phone call, but it doesn't prevent them from possessing a firearm. It also doesn't prevent them from

leaving the house; and we have no indication, unless there's another phone call made, that the person has left.

You suggested reporting to Pretrial Services. He's already been ordered to do that and wasn't. And so I don't—and it's not an issue related to something for which some type of treatment could be ordered.

So I do find that the judge made the appropriate decision, perhaps with this additional argument by the State; but for those reasons I am going to deny the motion for relief under the Pretrial Fairness Act that the defense filed on 9/18 of '24."

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23                        A. Circumstantial Evidence of the Offense

¶ 24    In defendant's motion for relief (he has filed no memorandum), he contends that in case No. 24-CF-2063, "[t]he State failed to meet its burden by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed the offense(s) charged." See *id*. § 110-6.1(e)(1).

¶ 25    As we said, the criminal complaint in that case has five counts. Let us consider one of those counts, count II, which charges defendant with violating section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2022)): unlawful possession of a firearm by a felon, a detainable offense (see 725 ILCS 5/110-6.1(a)(6)(O) (West 2022)). In his motion for relief, defendant argues that the evidence that he committed that offense "is highly circumstantial."

¶ 26    It is unclear, though, why "highly circumstantial" must be regarded as a pejorative

- 7 -

term. Circumstantial evidence is not an inherently inferior type of evidence. Often, it is more convincing than direct evidence would be. Assume, for instance, a police officer testified that as he was chasing the defendant, he saw a pistol in the defendant's hand. Such testimony would be direct evidence. The police officer, however, might be mistaken. Instead of holding a pistol, the defendant might have been holding something else—say, a cell phone—which the police officer mistook for a pistol.

¶ 27　　　　If, by contrast, the police officer, as he was running after the defendant, saw the defendant reach toward his waistband where a pistol would be thrust, heard a metallic clink as of a pistol striking the pavement, and then found a pistol lying on the area of the pavement where the defendant was running when he heard the metallic clink, those facts—together with the defendant's flight, which suggests a consciousness of guilt—might be more compelling, in their combination, than a mere sighting of the pistol in the defendant's hand would be. In other words, this circumstantial evidence might be regarded as superior to direct evidence.

¶ 28　　　　In *People v. Peete*, 318 Ill. App. 3d 961, 965-66 (2001), the circumstantial evidence was sufficient to prove, beyond a reasonable doubt, the defendant's possession of a pistol. In that case, the defendant, a convicted felon, took off running when a uniformed police officer ordered him to stop. In the foot chase, another police officer saw the defendant " 'start to dig' on the right side of his waistband in what looked to be an attempt to remove something from his waistband or pocket." *Id.* at 965. Soon afterward, an owner of a house by which the defendant ran saw a pistol behind some hedges. *Id.* at 964.

¶ 29　　　　Presumably, in challenging the sufficiency of the evidence, the defendant in *Peete* argued that pretty much anyone could have thrown the pistol into the hedges. The Fourth District responded, "Proof beyond a reasonable doubt does not require the exclusion of every possible

doubt, and a conviction may be sustained wholly upon circumstantial evidence where the entire chain of circumstances leads to a reasonable and moral certainty that the defendant committed the crime." *Id.* at 965. Given the circumstantial evidence in *Peete*, the Fourth District held that "a rational trier of fact could have found [the] defendant guilty[,] beyond a reasonable doubt," of unlawful possession of a firearm by a felon. *Id.* at 966.

¶ 30　　　　Because the facts in this case do not differ significantly from those in *Peete*, we conclude that the lower evidentiary standard—proof by clear and convincing evidence (see 725 ILCS 5/110-6.1(e) (West 2024))—could be found to be satisfied in this pretrial detention proceeding.

¶ 31　　　　　　　　B. Mitigating Conditions of Pretrial Release

¶ 32　　　　Defendant asserts that the State "effectively ignored" the third factor in section 110-6.1(e), namely, that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article [(*id.* § 110-10(b)) could] mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3). Specifically, according to defendant, "the State failed to address the defense's suggestion that, in addition to the standard release conditions, a combination of the following" court orders "would be sufficient":

　　　　　　"(a) Not to possess any firearms or dangerous weapons;

　　　　　　(b) Not to leave the State without permission of the Court;

　　　　　　(c) To be on 'house arrest' or a curfew where he could only leave for
　　　　work, medical or legal reasons;

　　　　　　(d) To be on electronic monitoring[;]

　　　　　　(e) To report to pretrial services when and as directed by them; [and]

(f) To engage in any services recommended by pretrial services."

¶ 33　　　　It is true that, at the hearing of August 22, 2024, the prosecutor did not itemize those proposed conditions and respond to them one by one. Even so, the prosecutor discussed the third factor in section 110-6.1(e)(3) and argued, in so many words, that conditions of pretrial release would be futile, considering that (1) defendant had been sent to prison four times for firearms offenses and (2) he was currently on pretrial release and "the supervising [probation officer] ha[d] yet to see [him] as all forms of contact *** ha[d] been unsuccessful thus far." The implication of the prosecutor's argument was that defendant had repeatedly disregarded judicial commands and prohibitions and there was no reason to suppose that this time would be different. If the threat of a fifth prison term did not deter defendant from unlawfully possessing a firearm, then electronic monitoring (even if available), a stay-at-home order, and pretrial services would not do so. This implication was clear enough from the prosecutor's argument.

¶ 34　　　　In any event, this implication was spelled out subsequently, at the hearing of October 1, 2024, on defendant's motion for relief. At that hearing, the State and the circuit court responded more specifically to defendant's suggested pretrial conditions. We find no abuse of discretion in the court's conclusion that only pretrial detention would prevent defendant from again coming into possession of a gun.

¶ 35　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 36　　　　For the foregoing reasons, we affirm the circuit court's judgment.

¶ 37　　　　Affirmed.